June 3, 2020

> APPLICATION DENIED
> SO ORDERED
> VERNON S. BRODERICK
> U.S.D.J. 6/26/2020
>
> In light of Plaintiffs' assertion concerning the meet and confer process, the parties are directed to meet and confer further regarding the alleged discovery deficiencies. The parties are further ordered to submit a proposed protective order, and to specify any objections they have to the proposed protective order. In accordance with Rule 3 of my Individual Rules and Practices in Civil Cases, the parties may submit a joint letter seeking court intervention if they cannot come to an agreement after further discussions.

**BY E-FILE**

Honorable Vernon S. Broderick
U.S. District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

*Re:  Cotiviti Holdings, Inc. et al. v. McDonald et al.
      Request for Pre-Motion Conference Regarding Discovery Deficiencies*

Judge Broderick:

The Parties collectively write to request a Pre-Motion Conference regarding alleged deficiencies in Plaintiffs' responses to Defendants' discovery requests. Defendants first raised alleged deficiencies with Plaintiffs' responses to Defendants' interrogatories on April 14, 2020. The Parties have met and conferred regarding these deficiencies on multiple occasions, most recently on May 28, 2020 and, having failed to resolve these disputes, decided to raise these issues with your Honor.

*<u>Defendants' Position[1]</u>*

This is a trade secret misappropriate case, yet Plaintiffs have refused to disclose which of its alleged amorphous trade secrets each individual defendant: (1) had access to while at Plaintiffs; (2) which they misappropriated and (3) how each defendant misappropriated each specific trade secret. (Ex. A, at Interrogatory Nos. 1-3.)

In response to Interrogatory No. 1, Plaintiffs provided a nearly verbatim answer for each individual Defendant despite the fact that each Defendant held a completely different role at Plaintiffs. The responses provides no details as to the actual trade secrets to which Defendants had access, instead opting to merely provide a high level discussion of Plaintiffs' "audit concepts" without any explanation of

---

[1] Defendants have provided Plaintiffs with ample time to fully respond to their discovery requests. Defendants served their discovery requests on February 25, 2020 and, after numerous requests for extensions, Plaintiffs finally served their bare-bones responses on April 10, 2020. On April 14, 2020, Defendants' counsel informed Plaintiffs' counsel that their interrogatory responses "suffer from a number of glaring deficiencies." The Parties first met and conferred about these deficiencies on April 17, 2020, during which Defendants' counsel stated that, at the very least, Plaintiffs needed to identify which audit concepts each Defendant had access to and when they accessed said audit concept. Alternatively, Defendants' counsel stated that Plaintiffs could produce the actual audit concepts they believe each Defendant may have had access to and evidence of their access. Plaintiffs' counsel protested, explaining that it would likely be an impossible task for them to describe the trade secrets, but said they would look into it. Since the April 17, 2020 call, Plaintiffs have made no effort to supplement their discovery responses. Plaintiffs' claims that they cannot identify the trade secrets at issue is unacceptable. Prior to filing a lawsuit alleging misappropriation of trade secrets, counsel for Plaintiffs had a duty to ensure that there was a good-faith basis to support their clients' claims. FED R. CIV. P. 11(b). Inherent in this analysis is understanding the specific trade secrets that were allegedly misappropriated by *each* Defendant. Plaintiffs clearly failed to undertake this analysis and must do so now.

which "audit concepts" each Defendant had access to. (*Id.*) In response to Interrogatory No. 2, Plaintiffs merely referred Defendants to their response to Interrogatory No. 1, which provides none of the information requested in Interrogatory No. 2. (*Id.*) In response to Interrogatory No. 3, Plaintiffs referred Defendants to their responses to Interrogatory 2, which, again, provides none of the information requested in Interrogatory No. 3. (*Id.*) Plaintiffs non-answer approach leaves Defendants unable to determine: (a) what those trade secrets are; (b) whether and to what extent each Defendant had access to those trade secrets during their employment with Plaintiffs; (c) the basis for Plaintiffs' claims that each Defendant misappropriated Plaintiffs' trade secrets and how they did so; and/or (d) how each Defendant is relying upon these trade secrets in their role with DHP. These questions form the bedrock of Plaintiffs' trade secret claims against Defendants. Indeed, should Plaintiffs be permitted to proceed with their claims without further identification of their amorphous and unidentified trade secrets, every employee of Plaintiffs who leaves to work for a competitor would be subject to a lawsuit for stealing the same alleged trade secrets as the Defendants are summarily accused of misappropriating in this matter.

Nearly a year into this litigation, Plaintiffs inability to provide any substantive response to these interrogatories only further demonstrates why this Court should dismiss Plaintiffs' Complaint (as requested in Defendants' pending Motion to Dismiss).[2] Regardless of whether this Court is willing to do so, discovery should not proceed any further, and Defendants should not be required to continue incurring litigation costs, until Plaintiffs specifically identify the trade secrets they contend that each Defendant had access to and misappropriated, and the basis for that contention.

In addition to the above deficiencies, Plaintiffs' interrogatory responses suffer from the following additional deficiencies:

- Interrogatory No. 4: Plaintiffs responded only to subpart (i) of this interrogatory and failed to respond to subparts (ii)-(v), which are critical inquiries required to evaluate Plaintiffs' trade secret claims. Plaintiffs must respond to this Interrogatory in full.

- Interrogatory No. 6: Plaintiffs failed to provide information as to how Defendants' current roles at DHP will cause them irreparable harm, instead opting to merely describe each Defendants' role when they worked for Plaintiffs. (*Id.*) Plaintiffs must provide a complete response to the actual question posed.

- Interrogatory No. 7: Plaintiffs objected to this interrogatory, which seeks information about the damages they have suffered, claiming that "the amount of extent of the harm that Defendants have inflicted upon Plaintiff is to be determined through discovery and trial." (*Id.*) This is unacceptable. Plaintiffs must identify the harm they claim to have suffered to date or acknowledge that they currently have no knowledge or evidence of any harm.

- Interrogatory No. 8: In response to this interrogatory, Plaintiffs state that they "offer, among other things, coordination of benefits, data mining, payment accuracy audits, and risk adjustments solutions to their clients." (*Id.*) This is non-responsive. If Plaintiffs do not offer payment integrity solutions to customers, they need to affirmatively say so.

---

[2] This is only further amplified by revelations during the meet and confer process. During this process it became evident that Plaintiffs still do not even know what each Defendant does for their current employer. This not only demonstrates that Plaintiffs' have no good faith basis to support their breach of contract claim, but also that they cannot possibly have a good faith basis to believe that Defendants' roles with their current employer are so similar that they must inevitably rely upon Plaintiffs' trade secrets in performing those roles.

On May 28, 2020, Plaintiffs took the position – for the first time – that they would not supplement their responses to any of the above interrogatories because they allegedly exceed the scope of Local Rule 33.3. Plaintiffs fail to recognize that Local Rule 33.3 permits substantive interrogatories where "they are a more practical method of obtaining the information sought than a request for production or a deposition." Here, it is more practical for Plaintiffs to respond to these interrogatories than to force Defendants to address these issues through depositions and document productions. Indeed, it would be unduly burdensome and arduous for Defendants to use their limited deposition time exploring basic information about the identity and scope of the trade secret they are alleged to have misappropriated. Responding to these interrogatories will allow the Parties to streamline and focus the depositions on the relevant subject matter of this case.[3]

Regarding the Parties' protective order, Plaintiffs take issue with Defendants' position that the named Defendants must have access to documents designated as Attorneys' Eyes Only under the protective order; namely, Plaintiffs' alleged trade secrets. (Ex. B.) It is imperative that defense counsel is able to share and discuss Plaintiffs alleged trade secrets with Defendants to adequately defend against Plaintiffs' claims. Thus, Defendants' request that this Court order that Defendants be permitted to review documents designated as Attorneys' Eyes Only under the protective order.

For the above reasons, Defendants request a pre-motion conference with this Court to discuss Defendants' desire to file a Motion to Compel full and complete responses to Defendants' discovery requests, to file a Motion for Protective Order to stay discovery pending Plaintiffs' specific identification of the trade secrets at issue, as requested in Interrogatory Nos. 1-3 and to resolve issues relating to the Parties' agreed protective order.

### *Plaintiffs' Position*

Interrogatories

First, Defendants misstate the nature of the parties' conversations regarding discovery. The parties had agreed to temporarily stay its dispute over the extent and nature of Plaintiffs' responses to Defendants' Interrogatories while the parties explored the possibility of an out-of-court resolution to this case. Thus, the specific nature of the alleged deficiencies in Plaintiffs' responses to Defendants' Interrogatories were only discussed in any amount of detail in a meet-and-confer conversation on May 28, 2020. Earlier conversations, including that on April 17, 2020, merely alluded to a dispute regarding Interrogatory No. 1.

Second, Plaintiffs are not obligated to respond to Interrogatories Nos. 1-3, 4, 6 and 8. These Interrogatories are impermissible under the Southern District of New York Local Rule 33.3 ("Local Rule 33.3") and are premature contention interrogatories, which are impermissible at this early, limited stage of discovery. Local Rule 33.3(a) states that "at the commencement of discovery, interrogatories will be restricted to those seeking names of witnesses with knowledge of information relevant to the subject matter of the action, the computations of each category of damage alleged, and the existence, custodian, location, and general description of relevant documents, including pertinent insurance agreements, and other physical evidence, or information of a similar nature."

This Court has held that a party need not respond to Interrogatories that exceed the scope of Local Rule 33.3, even in a case where discovery had passed the initial conference stage and multiple rounds of

---

[3] Moreover, other than a boilerplate general objection, Plaintiffs failed to assert any objections to the scope of the interrogatories under Local Rule 33.3 in their responses and, thus, have waived any objection on these grounds. FED. R. CIV. P. 33(b)(4) ("Any ground not stated in a timely objection is waived").

discovery were exchanged.[4] *See Douglas v. Harry N. Abrams, Inc.,* No. 13-CV-2613 (VSB), 2016 WL 11645646, at *5 (S.D.N.Y. Aug. 23, 2016). Courts in this district routinely deny motions to compel responses to interrogatories that exceed the scope of Local Rule 33.3. *See, e.g., Rouviere v. DePuy Orthopaedics, Inc.,* No. 118CV04814LJLSDA, 2020 WL 1080775, at *2 (S.D.N.Y. Mar. 7, 2020); *US Bank Nat. Ass'n v. PHL Variable Ins. Co.,* 288 F.R.D. 282, 289 (S.D.N.Y. 2012); *Carling v. Peters*, No. 10 CIV. 4573 PAE HBP, 2012 WL 1438261, at *1 (S.D.N.Y. Apr. 24, 2012); *Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.,* No. 08 CIV. 1533 BSJ JCF, 2011 WL 1642381, at *4 (S.D.N.Y. Apr. 26, 2011); *Trilegiant Corp. v. Sitel Corp.,* 272 F.R.D. 360, 368 (S.D.N.Y. 2010).

Interrogatories Nos. 1-4 seek detailed information relating to the trade secrets that Defendants misappropriated. Interrogatory 6 seeks information not relating to computation of damages but related to Plaintiffs' legal contentions as to how they were damaged, and Interrogatory 8 seeks information relating to an undefined term whose relevance to this case is not at all clear. None of these Interrogatories fall within the categories enumerated by Local Rule 33.3(a).

As Magistrate Judge Parker explained in *Winfield v. City of New York*, No. 15-CV-05236-LTS-KHP, 2018 WL 2277838, at *2 (S.D.N.Y. May 18, 2018), "Local Rule [33] reflects the prevailing view in this District that interrogatories are often burdensome and not as effective as other methods of obtaining information in discovery." Thus, not only does Local Rule 33.3 itself prohibit these Interrogatories, but Local Rule 33.3 represents a practice in the Southern District that the Court should employ here.

Even during discovery, "interrogatories other than those seeking information described in [Local Rule 33.3(a)] may only be served (1) if they are a more practical method of obtaining the information sought than a request for a production or a deposition, or (2) if ordered by the court." *See* Local Rule 33.3(b). Neither is the case here. Defendants did not seek leave to serve such Interrogatories from this Court. The Interrogatories propounded by Defendants, especially Interrogatories Nos. 1-4, are precisely the sort that require long, narrative explanations that are subject to change based upon further discovery in this action, and are an inappropriate method of obtaining the information sought.

Further, Defendants' Interrogatories Nos. 1-4, 6 and 8 are all contention interrogatories. For example, Defendants allege that Plaintiffs need to explain "which 'audit concepts' each Defendant had access to, when the Defendants themselves possess this information. Defendants' true aim, articulated in their description above, is to seek information about "the basis for Plaintiffs' claims that each Defendant misappropriated Plaintiffs' trade secrets and how they did so," a quintessential contention interrogatory which demands broad facts in support of a claim.

According to Federal Rule of Civil Procedure 33, a court may order that contention interrogatories "need not be answered until designated discovery is complete, or until a pretrial conference or some other time." Fed. R. Civ. P. 33. Local Rule 33.3 narrows the timing of contention interrogatories even further, allowing them to be served only "[a]t the conclusion of other discovery, and at least 30 days prior to the discovery cut-off date." *See* Local Rule 33.3(c); *see also In re Facebook, Inc.,* No. MDL 12-2389, 2016 WL 5080152, at *3 (S.D.N.Y. July 7, 2016) (collecting cases holding that contention interrogatories are to be served at the conclusion of discovery). The reason for this rule is to prevent exactly what Defendants attempt to do here: Defendants seek to "fish for issues (and delay the litigation) by holding a hearing on a motion to compel and subsequently ordering the opposing party to summarize their potential trial via a contention interrogatory response" instead of reserving such interrogatories until "after discovery so that they may

---

[4] Plaintiffs' responses to Defendant's First Set of Interrogatories, served on March 17, 2020, to each of the Defendants included an objection to the entire first set of interrogatories "to the extent they seek to impose upon Plaintiffs obligations beyond the requirements of the . . . Local Rules of the Southern District of New York."

narrow issues already known, thus saving both the parties and the court from inefficiency and unnecessary delay." *See Facebook, Inc.,* 2016 WL 5080152 at *3. Not only is all of discovery in this case substantially incomplete, but a discovery schedule has not yet been ordered by this Court. As such, Defendants' contention interrogatories are clearly premature.

Third, Plaintiffs have lodged their objections to certain Interrogatories, which Defendants ignore here but remain valid objections. For example, Plaintiffs objected to Interrogatory No. 8 because the term "payment integrity solutions" is vague or undefined, but rather than providing a definition, Defendants merely reiterate their Interrogatory here. As another example, Plaintiffs objected to Interrogatory No. 1, and Interrogatories No. 2-4 by reference, because the term "trade secret" is undefined, and because they call for legal conclusions (or the application of legal conclusions to facts).

Protective Order

Plaintiffs have proposed a protective order to Defendants substantially similar to that which has been approved and entered by this Court in *Marsh & McLennan Company, LLC v. Ferguson*, 19-cv-03837-VSB (Dkt. # 30). Part of that protective order allows for the Parties to designate confidential trade secrets as Attorney Eyes Only. Plaintiffs allege that Defendants have been misappropriating their confidential trade secrets and proprietary information in service of their new employer. Plaintiffs have expended tremendous resources of time and money in developing these trade secrets and proprietary information. By granting Defendants further access to those trade secrets that Plaintiffs have marked Attorney Eyes Only, Defendants will have yet another opportunity to use those trade secrets for unfairly competitive activity.

On a meet-and-confer call on May 28, 2020 at 11:00 a.m., Plaintiffs proposed that Defendants' counsel request from Plaintiffs permission to share a specific document or documents with Defendants for purposes of defending the case, so that the parties can negotiate about specific documents on a case by case basis. Defendants refused this option. Defendants' counsel instead seeks blanket permission to share highly confidential Attorney Eyes Only information with Defendants in their sole discretion, thus eviscerating the Attorney Eyes Only designation entirely.

For the above reasons, Plaintiffs respectfully request that this Court deny Defendants' motion in its entirety, to set a discovery schedule for full discovery to commence, to enter the Protective Order proposed by Plaintiffs in its original form, and such other relief as this court deems just and proper.

\* \* \*

Thank you for your prompt attention to this matter.

                                                                  Respectfully submitted,

| By: | *s/ A. Michael Weber* | By: | *s/ Alex C. Weinstein* |
|---|---|---|---|
| | A. Michael Weber<br>Miguel Lopez<br>Daniella Adler<br>Littler Mendelson, P.C.<br>900 Third Avenue, 8th Floor<br>New York, NY 10022<br>T: +1 212 583 9600<br>mweber@littler.com | | Thomas R. Dee*<br>Alex C. Weinstein*<br>Vedder Price P.C.<br>222 North LaSalle Street<br>Chicago, IL 60601<br>T: +1 312 609 7500<br>tdee@vedderprice.com<br>aweinstein@vedderprice.com<br>*admitted *pro hac vice*<br><br>Daniel C. Green<br>Vedder Price P.C.<br>1633 Broadway, 31st Floor<br>New York, New York 10019<br>T: +1 212 407 7601<br>dgreen@vedderprice.com |
| | Attorneys for Plaintiffs | | Attorneys for Defendants |